NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILFREDO TITO ROSA, | : | |
| | : | Civil Action No. 06-1831 (NLH) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| et al., | : | |
| | : | |
| Respondents. | : | |

APPEARANCES:

WILFREDO TITO ROSA, Petitioner pro se
#03909-015
F.C.I. Fairton
P.O. Box 420
Fairton, New Jersey  08320

CHRISTOPHER J. CHRISTIE, United States Attorney
LOUIS J. BIZZARI, Assistant U.S. Attorney
Camden Federal Building
401 Market Street, 4th Floor
Camden, New Jersey  08101
Attorneys for Respondents

HILLMAN, District Judge

Petitioner Wilfredo Tito Rosa ("Rosa"), a federal prisoner

currently confined at the Federal Correctional Institution at

Fairton, New Jersey, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.  The named

respondents are the United States of America, and the Federal

Bureau of Prisons.

I.   BACKGROUND

Petitioner Rosa is currently serving a 144-month prison term to be followed by five years supervised release pursuant to his federal conviction on charges of cocaine distribution and conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 1956(h), respectively.  He was convicted in the United States District Court for the District of Delaware.  Rosa's projected release date, based on good conduct time earned, is August 26, 2007.

The Federal Bureau of Prisons ("BOP") recently considered Rosa for assignment to prerelease custody, and it has been determined that he should receive the full six months home confinement placement beginning February 28, 2007, based on BOP Program Statement 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedures, due to Rosa's medical condition as legally blind.  (Declaration of T.A. Jones, ¶ 7, Exhibit 1 to Respondents' Answer; Petitioner's Traverse at Exs. 3 and 4).

On April 20, 2006, Rosa filed this federal habeas petition seeking immediate home confinement based on his medical condition as a legally blind person.[1]  Respondents filed their Answer on

_____

[1]   The Court notes that Rosa had filed two motions, in December 2005 and again in March 2006, before his sentencing judge in the United States District Court for the District of Delaware, seeking a modification of his sentence to allow petitioner to spend the remaining portion of his sentence under

2

August 2, 2006.  Rosa filed a traverse or objections to the
Answer on August 16, 2006.

Respondents assert that Rosa has not attempted to fully
exhaust his administrative remedies before bringing this action,
as required by 42 U.S.C. § 1997e(a).  They also contend that this
petition is premature because Rosa's pre-release referral packet
is still under review.  While it appears that a decision as to
home confinement has been made, allowing Rosa the full six months
placement under 18 U.S.C. § 3624(c) before his projected release
date in August 2007, that six month period is not the issue now
before the court as Rosa seeks immediate home confinement before
the recommended six month period commences.

## II.  RELEVANT STATUTES AND REGULATIONS

Federal law imposes upon the BOP the obligation and
discretion to designate the place of a prisoner's imprisonment,
as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall
> designate the place of the prisoners's imprisonment.
> The Bureau may designate any available penal or
> correctional facility that meets minimum standards of
> health and habitability established by the Bureau,

---

home confinement.  Rosa explained that he needed time to adjust
to community life and support his wife and ill daughter because
of his degenerative ocular disease known as Macular Degeneration.
The court denied Rosa's motions, finding no jurisdiction under 18
U.S.C. § 3582(c) or 18 U.S.C. § 3553(a)(2),(3), to modify Rosa's
sentence as requested.  The court further held that it had no
jurisdiction over Rosa's custodian necessary to grant relief
under 28 U.S.C. § 2241.  (See Petitioner's Traverse, Docket Entry
No. 11, filed on August 16, 2006, at Exhibit # 8).

whether maintained by the Federal Government or
otherwise and whether within or without the judicial
district in which the person was convicted, that the
Bureau determines to be appropriate and suitable,
considering -

> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the
sentence--
> > (A) concerning the purposes for which the
sentence to imprisonment was determined to be
warranted; or
> > (B) recommending a type of penal or
correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the
Sentencing Commission pursuant to section 994(a)(2) of
Title 28.

In designating the place of imprisonment or making transfers
under this subsection, there shall be no favoritism given to
prisoners of high social or economic status.  The Bureau may
at any time, having regard for the same matters, direct the
transfer of a prisoner from one penal or correctional
facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to

the extent practicable, serve the last portion of their

imprisonment under conditions that will facilitate their

transition from prison life to the community.

> (c) Pre-release custody.--The Bureau of Prisons shall,
to the extent practicable, assure that a prisoner
serving a term of imprisonment spends a reasonable
part, not to exceed six months, of the last 10 per centum of
the term to be served under conditions that will afford the
prisoner a reasonable opportunity to adjust to and prepare
for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

Recently, in <u>Woodall</u>, the Third Circuit Court of Appeals considered and rejected the validity of BOP regulations that became effective on February 14, 2005, which regulations restricted an inmate's CCC transitional placement to the last 10% of the inmate's sentence.  Instead, the Third Circuit held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

> In sum, individual determinations are required by § 3621(b).  ...  While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.
>
> . . .
>
> The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered."  We disagree.  ...
>
> ... The statute as a whole, if it is to have practical effect, indicates that the factors enumerated must be considered in making determinations regarding where to initially place an inmate, as well as whether <u>or not</u> to transfer him.  ...  The congressional intent here is clear:  determinations regarding the placement scheme-including where a prisoner is held, and when transfer is appropriate-must take into consideration individualized circumstances.  ...
>
> . . .
>
> In short, we conclude that the § 3621(b) factors apply to BOP determinations regarding whether or not initial placements or transfers are appropriate.  We thus do  not find that the factors are limited by the temporal references in § 3624.

<u>Woodall</u>, 432 F.3d at 247, 249-50.

5

Thus, a prisoner is entitled to an individualized determination as to his pre-release placement based upon the factors identified in § 3621(b).  However, as noted by the Third Circuit, the fact that the BOP <u>may</u> assign a prisoner to a CCC or home confinement does not mean that it <u>must</u>.

In implementing pre-release custody programming under § 3624(c), the BOP has available a variety of non-prison programs and facilities.  Pertinent here, the BOP may utilize home confinement as an option for pre-release custody programming.  Typically, home confinement operates to confine the inmate to his home except during work hours.  Some home confinement programs are operated by CCC contractors, and others by the U.S. Probation Office.  <u>See</u> BOP Program Statement 7310.04 Section 7.

### III.  ANALYSIS

#### A.  Standard of Review

Rosa seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions

must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.   Exhaustion of Administrative Remedies

       Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[2] See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

_____

       [2]  To exhaust administrative remedies before the Bureau of Prisons, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally. See 28 C.F.R. § 542.13. If the inmate does not receive a favorable termination, he may submit a formal written Administrative Remedy Request for response by the warden of the facility. See 28 C.F.R. § 542.14. If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of the decision. If he is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office within 30 days of the date of the decision. See C.F.R. § 542.15. If these responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F. Supp.2d 302, 309 (D.N.J. 1999), aff'd,

248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau

of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,

exhaustion of administrative remedies is not required where

exhaustion would not promote these goals.  See, e.g., Gambino v.

Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required

where petitioner demonstrates futility); Lyons v. U.S. Marshals,

840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where

it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if

the administrative procedure is clearly shown to be inadequate to

prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

*2 (E.D. Pa. 2000) (exhaustion not required where delay would

subject petitioner to "irreparable injury").

    In Snisky v. Pugh, the petitioner did not deny his failure

to exhaust; however, the Court excused exhaustion because the

petitioner was scheduled to be released, and his claim was

clearly without merit.  See 974 F. Supp. 817, 819 (M.D. Pa.

1997), rev'd on other grounds, 159 F.3d 1353 (3d Cir. 1998).  The

court recognized that exhaustion could be excused where it would

be futile.  See id.  In Snisky, the court found that the BOP

8

"unequivocally" would deny the petitioner's relief, and he would return to the district court after the denial.  Thus, the court addressed the claims on the merits.

Likewise, in <u>Ferrante v. Bureau of Prisons</u>, the court found that if the petitioner's claim were meritorious, he would be released to a halfway house relatively soon; therefore, dismissing the petition for lack of exhaustion would be futile. <u>See</u> 990 F. Supp. 367, 370 (D.N.J. 1998)(citing <u>Snisky</u>, 974 F. Supp. at 819-20).  Further, the court held that the petitioner's claim was clearly without merit, so that the exhaustion issue need not be reached.  <u>See</u> <u>id.</u>  <u>See</u> <u>also</u> <u>Fraley v. Bureau of Prisons</u>, 1 F.3d 924, 925 (9th Cir. 1993)(stating that exhaustion was not required because it was futile, as Regional Director would "almost certainly" have denied request, and term of imprisonment was completed).

Here, Rosa did not attempt to exhaust his administrative remedies and there is no indication that resort to administrative remedies would be futile.  Indeed, the goals of administrative review are especially pertinent here.  Namely, facilitating judicial review and conserving judicial resources by allowing the BOP the opportunity to develop a factual record and apply its expertise; permitting the BOP the opportunity to grant the relief requested if it deems such relief appropriate; and providing the BOP the opportunity to correct any error thereby fostering

administrative autonomy.  There is no indication from the record,
that if Rosa were to file an administrative remedy the BOP would
not give it careful review.

Moreover, it is clear that the BOP has the discretionary
authority under § 3621(b) to determine Rosa's place of
imprisonment at any time during his sentence.  In general, an
inmate does not have a liberty interest in assignment to a
particular institution or to a particular security
classification.  See Wilkinson v. Austin, 125 S.Ct. 2384, 2393
(2005)(the Constitution does not give rise to a liberty interest
in avoiding transfers to more adverse conditions of confinement);
Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano,
427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236,
243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting
that prison classification and eligibility for rehabilitative
programs in the federal prison system are matters delegated by
Congress to the "full discretion" of federal prison officials and
thus implicate "no legitimate statutory or constitutional
entitlement sufficient to invoke due process").  See also Sandin
v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty
interest is implicated only where the action creates "atypical
and significant hardship on the inmate in relation to the
ordinary incidents of prison life" or creates a "major disruption
in his environment").  Furthermore, the placement of prisoners

10

within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Id., 427 U.S. at 225.

Therefore, because the decision as to Rosa's place of imprisonment is committed to the discretionary authority of the BOP, pursuant to 18 U.S.C. § 3621(b), and Rosa has not attempted to seek administrative review of his request for home confinement before his statutory pre-release custody, which is set to begin in February 2007, the Court will dismiss this action, without prejudice, for failure to exhaust administrative remedies.

### III.   CONCLUSION

For the reasons set forth above, the Petition will be dismissed without prejudice for failure to exhaust administrative remedies.   An appropriate order follows.

_Noel L. Hillman_
NOEL L. HILLMAN
United States District Judge

Dated: October 3, 2006

11